State ex rel. Adamson v. Lafayette Co. Ct.

THE STATE OF MISSOURI *ex rel.* THOMAS ADAMSON, Plaintiff, *v.* THE COUNTY COURT OF LAFAYETTE COUNTY, Defendant.

1. *Sheriff—Collector—Officer—County Court.*—None of the acts required by the statutes to be performed by a party in order to qualify him to exercise the functions of the office of sheriff, depend upon the approval of the County Court. It is immaterial as far as the right of the sheriff elect to exercise the duties of his office is concerned, whether his bond be approved by the Circuit Court within fifteen days after he receives the certificate of election or not; the time is immaterial if the bond be properly approved—State ex rel., &c. v. Churchill, *ante* 41; State ex rel., &c. v. Howard Co. Ct., *ante* 247. The County Court, when the sheriff elect presents his bond as collector of the revenue, cannot inquire whether his bond as sheriff has been approved by the Circuit Court; it must recognize his commission issued by the Governor as conclusive of his right to the office.

2. *County Court—Jurisdiction—Duties Ministerial and Judicial.*—The duties of the County Court, in passing upon the bond of the sheriff as collector of the revenue, are partly judicial and partly ministerial in their nature. The court has a discretion as to the sufficiency of the bond offered for their approval, which must be exercised in a lawful manner upon the facts presented, and the Supreme Court will exercise a superintending control over that discretion, so far as to compel the County Court to proceed according to a sound and just discretion, and to prevent the exercise of it in an unjust and arbitrary manner. To refuse to hear any testimony, or to pass upon the sufficiency of the securities offered, is not exercising a sound and legal discretion.—State ex rel. v. Lafayette Co. Ct., *ante* 221.

3. *Mandamus—Practice—Return.*—The issues should be made up on the return to the alternative writ; and for the purpose of reaching the legal questions involved, it will be assumed, in the Supreme Court, that the necessary steps in pleading have been taken, whenever it is apparent from the facts presented that such questions properly arise.

4. *Revenue—Collector's Bond—County Court.*—The County Court is not prohibited by the statute from requiring of the collector of the revenue, at any time when the public interest demands, additional bond and security, allowing him reasonable time to comply with the order of the court; and if reasonable time be not given, and no good cause be shown to the contrary, the presumption will be that the court has acted in an arbitrary and unjust manner. A copy from the assessment books showing the several amounts at which the securities in the collector's bond are assessed, will not be conclusive upon the amount of property owned by any individual.

*Petition for Mandamus.*

The petition of Thomas Adamson, the plaintiff, respectfully represents, that at a general election held in the county of

Lafayette, in the State of Missouri, on the 6th day of November, A. D. 1866, he was regularly and legally elected and chosen sheriff of the said county of Lafayette, having received a majority of all the legal votes cast for candidates for that office ; that a certificate of election was issued to him, and that afterwards, to-wit, on the 3d day of January, 1867, the Governor of said State issued and delivered to him a commission, dated the day and year last aforesaid, under the great seal of the State, with the attestation of the Secretary of State, whereby plaintiff was commissioned sheriff within and for the county aforesaid for the term of two years.

Plaintiff further states that in due time before his said election he took, subscribed and filed his oath of loyalty as required by law, and after his election, upon the receipt of said commission, took, subscribed and endorsed on said commission the oath of office prescribed by law, and filed in the clerk's office of said County Court, the same not then being in session, a good and sufficient bond with sureties as *ex officio* collector of said county, which said bond was approved by the justices who then composed said County Court and by the clerk thereof in vacation.

Plaintiff further states, that, since the receipt of said commission and approval of his bond as aforesaid, he acted as and discharged the duties of sheriff and collector of said county until about July 9, 1867, as hereinafter set out.

Plaintiff further states, that at a term of said County Court, which was then and is now composed of Jesse Schofield, N. W. Sitton, and William L. Thomas, justices thereof, begun and held within and for the county aforesaid on the 6th day of May, A. D. 1867, and on the 14th day of said term, being the 24th day of May, 1867, the following proceedings were had and order made by said court, to-wit :

" Whereas, it appears to the court here that the State and county revenue of Lafayette county for the year 1867 will amount to the sum of about eighty-five thousand dollars, and it further appearing to the court here that Thomas Adamson, who now assumes to act as sheriff of the said county

of Lafayette by virtue of a commission issued by the Governor of the State of Missouri, has failed to execute a bond as collector of the revenue as by law the sheriff is required to do, it is by the court ordered that said Thomas Adamson be notified that he is required to execute a bond as collector of the revenue of said county in the penal sum of one hundred and seventy thousand dollars, with good and sufficient security, conditioned as the law requires ; and that he be required to exhibit and produce such bond to this court for its action thereon within ten days after he shall be served with a copy of this order. And it is further ordered that a copy of this order be served on the said Thomas Adamson forthwith, and that a copy of the adjourning order of this court, when made, be also served upon said Thomas Adamson immediately after the adjournment of said court."

Plaintiff further states that on the 25th day of May, 1867, said court adjourned to the 3d day of June, 1867, and that copies of the foregoing order and of the order of adjournment were served upon him.

Plaintiff further states that on said 3d day of June, A. D. 1867, he appeared before said court, then in open session, and produced, exhibited and offered for approval his bond as collector of the revenue aforesaid, with good and sufficient sureties in the penal sum of one hundred and seventy thousand dollars, and conditioned as required by law, which said bond plaintiff now exhibits to this honorable court.

Plaintiff further states, that, anticipating unfair and unjust action on the part of said court, the judges whereof are personally and politically hostile to him, he took extraordinary pains in procuring sureties. He alleges that thirty-five well known and responsible citizens of Lafayette county, who are owners of real estate situate therein, became his sureties in said bond, and as such executed the same, he having first executed it as principal ; and he further alleges and offers to prove to this honorable court, that the said sureties are owners of real estate in said county of the value of at least three hundred thousand dollars, subject to execution, over

and above their debts and liabilities. He avers also that this fact was and is well known to the justices of said County Court.

But plaintiff further states, that, notwithstanding the premises, the said court, actuated by malice and by a determination to deprive him of his said office through a corrupt, arbitrary and illegal use of the forms of law, rejected and refused to accept said bond, and also refused to allow plaintiff to prove the sufficiency and responsibility of his sureties.

The plaintiff further states that on the 6th day of June, A. D. 1867, said County Court, in order to carry out its malicious, arbitrary, corrupt and illegal intention and determination, made and adopted an order as follows, viz.: "It appearing to the court that Thomas Adamson has failed to execute bond as collector as required by law, and it further appearing that the time fixed by the statute for the execution of such bond has expired, and that more than ten days has elapsed since said Adamson has been notified and required by the court to execute said bond conditioned according to law, and said Adamson having failed to execute his bond as collector, said office has become and is in law vacant, and the court finds that the office of sheriff and collector for the county of Lafayette is by operation of law vacant in consequence of said Thomas Adamson failing to execute his bond as collector of said county within the time and in the manner required by the statute in such cases made and provided; and it is further ordered that the coroner of said county be notified of said vacancy, and required to act as sheriff until such vacancy is filled."

The plaintiff alleges that the recitals and statements in said order, that he had failed to execute the bond required, are false and untrue, and that they were so known to be by said court; that said court made said recitals and statements with the corrupt intent to deprive the plaintiff of his said office in defiance of law and justice, and of the expressed will of the majority of the legal voters of Lafayette county; that he executed and tendered to said court a good and suffi-

cient bond conditioned according to law with ample security for his performance thereof as aforesaid, and that the action of said court respecting the same was not the exercise of the discretion lawfully pertaining to its judicial functions, but was the corrupt, arbitrary and illegal action of the justices thereof, sitting as a court and using its forms to oppress, and unjustly and illegally deprive plaintiff of his said office.

The plaintiff further states, that, to carry out the malicious, oppressive and illegal designs and determinations as aforesaid, said County Court ordered a special election to be held in Lafayette county on the 9th day of July, 1867, to elect and choose a sheriff for said county of Lafayette, and on said 9th day of July, 1867, caused poll-books to be opened at the different voting precincts in said county, at which divers persons cast votes for a sheriff for said county as if there had been a vacancy in said office, and as if said election had been lawfully ordered ; whereas, in fact, the plaintiff alleges that he was then and still is of right the sheriff of said county of Lafayette, that there was no vacancy in said office, and that said election was fraudulent, null and void.

Plaintiff further states that after said pretended election was held, the said justices of said County Court ordered the clerk thereof to issue a certificate of election to one James M. Poule, certifying that he had been duly elected sheriff of said county, which said certificate was false and was known so to be by said justices, and was by them so ordered to be issued for the purpose and with the intent of oppressing the plaintiff as aforesaid.

The plaintiff further states, that the Governor of the State refused to recognize said certificate of election and refused to issue a commission thereupon to said James M. Poule ; that upon said refusal said justices illegally ordered the coroner of said county to perform and discharge the duties of sheriff thereof, and that he obeyed said order, and is now wrongfully usurping the said office of sheriff and preventing the plaintiff from exercising the functions thereof.

The plaintiff further states that he is remediless in the

premises by or through ordinary process or proceedings at law, and he therefore prays this honorable court to award against said County Court a writ of *mandamus* commanding and requiring it to accept and approve said bond, and to vacate and annul all of the orders aforesaid, and to recognize the plaintiff as the lawful sheriff of said county ; and for such other process, orders, and remedies, as may to the court seem meet.

### Demurrer to Petition and writ.

For answer and return to said writ the defendant demurs to the petition and writ of the plaintiff in the above case, and assigns the following causes of demurrer, to-wit :

1. Said petition and the matters and things therein as stated and set forth are not sufficient in law or equity to entitle the plaintiff to the relief asked for in said petition, or to authorize the issuing of said writ of mandamus.

2. Said petition does not state or show that the plaintiff ever executed bond to the satisfaction of the County Court, within the time prescribed by the statute in such cases made and provided, in the sum of double the amount of revenue to be collected by him ; nor does said petition show or state that the plaintiff ever at any time prior to the issuing of the writ in this case, and after the time of his alleged election to said office of sheriff of Lafayette, filed in or tendered to the County Court of said county a bond in double the amount of the revenue to be collected by him, for their acceptance with good and sufficient securities, as it was his duty, under the provisions of the statute in such cases provided, to do ; nor does he state or show that the bond rejected by the County Court was a good and sufficient statutory bond.

3. Said petition does not state that the bond tendered by the plaintiff and rejected by the defendant was a bond for at least double the amount of all the revenue to be collected by the plaintiff, or such a bond as it was the duty of the defendant in the discharge of their duties as a County Court

to accept and approve, or such a bond as the law requires and makes it their duty to approve.

4. Said petition does not state or show that the bond which the plaintiff asks this court to grant a peremptory mandamus to approve, was or is such a bond as the statute in such cases provided requires said plaintiff to tender to said court, to-wit, a bond in at least double the amount of all the revenue of said county to be collected by the plaintiff.

5. Said petition asks this court to review and vacate certain orders of the County Court of said county of Lafayette finding that the office of sheriff of said county was vacant, and calling a special election to fill said vacancy, and notifying the coroner of said county of said vacancy, and requiring him to discharge the duties of said office until said vacancy was filled, and also the order rejecting the bond tendered by the plaintiff; but said petition does not allege or state that plaintiff ever made any motion in said County Court to vacate said orders or any of them, or that said defendant has ever refused to vacate the same or to entertain any motion for their vacation, or that the said defendant has ever in any manner been solicited or moved to set aside or vacate the same.

6. Said petition does not show that plaintiff has exhausted or availed himself of all legal remedies (other than mandamus) to secure the vacation of said orders complained of in his petition, and the approval of his said bond, or that he is otherwise without any adequate legal remedy.

7. Said petition is multifarious, contradictory, inconsistent, and uncertain.

8. Said petition does not show that the said plaintiff has ever executed any bond as sheriff of said county as required by the statute, and which is a condition precedent to his right to exercise the functions and duties of collector of said county of Lafayette.

*Ewing & Holliday,* for respondent.

I. The petition and writ show no sufficient grounds for the

relief asked for, or for a peremptory mandamus upon the respondent—G. S. 1865, p. 112, §§ 1 to 7 ; id. 156 ; State ex rel. Jackson v. Howard Co. Ct., decided at St. Joseph, not reported ; People ex rel. Dougherty v. Judges Dutchess C. P. C., 20 Wend. 658–60 ; People v. Baker, 35 Barb. 109 ; Judges Com. Pleas v. People ex rel. Savage, 18 Wend. 79 ; People v. County Judges Clinton Co., 13 How. Pr. 277 ; Elkins v. Athearn, 2 Denio, 191.

II. The party applying for the writ must not only show that he has no other remedy, but also a specific right to the office by showing that he has done every act on his part required to be done—39 Mo. 388.

Attorney-General and *Harding & Crane*, for plaintiff.

FAGG, J.—It appears from the petition of plaintiff, that at an election in and for the county of Lafayette, held on the 6th day of November, 1866, he received a majority of all the legal votes cast at said election for the office of sheriff of said county ; that he received a certificate of his election, and on the third day of January next thereafter the Governor of the State issued and delivered to him a commission as sheriff in conformity with the requirements of law ; that previous to the election he took and subscribed the oath of loyalty, and, after the receipt of his commission, the required oath of office ; that he thereupon executed his bond as *ex officio* collector of the revenue for that county, which was filed in the office of the clerk of the County Court (the court itself not then being in session) and approved by the justices thereof ; that he thereupon proceeded to act as sheriff and collector of said county until the month of July following, when his office was declared vacant by the County Court. It appears that previous to the making of this order on the 24th day of May, 1867, the court made an order reciting the fact that plaintiff was then assuming to act as sheriff under his said commission ; that the revenue of the county amounted to about the sum of $85,000 ; that plaintiff had "failed to execute a bond as collector of the revenue as by law the sheriff

is required to do," and ordering him to execute such bond in the penal sum of $170,000, with good and sufficient securities, within ten days thereafter. Within the time limited by the order the plaintiff appeared and presented to the court a bond in the sum required, with thirty-five good and responsible sureties, and asked to have the same approved. The petition further states, that, "notwithstanding the premises, the said County Court, actuated by malice, and by a determination to deprive him of his said office through a corrupt, arbitrary and illegal use of the forms of law, *rejected and refused to accept said bond, and also refused to allow plaintiff to prove the sufficiency and responsibility of his sureties.*" The court then declared the office vacant, and ordered a special election to be held for the purpose of filling said vacancy. A writ of mandamus is prayed for requiring and commanding said court to accept and approve plaintiff's bond, to vacate and annul all of its orders in reference to said office made subsequent to its refusal to accept and approve his bond as aforesaid, and to recognize the plaintiff as the lawful sheriff of said county.

To this petition a demurrer has been filed, and the facts stated by plaintiff are to be taken as true for all the purposes of this investigation.

Passing over the general causes of demurrer assigned by the defendant, we shall proceed to examine only those that are special. First, it is averred that the petition fails to show that the plaintiff did within the time prescribed by law execute a bond to the satisfaction of the County Court in a penal sum double the amount of the revenue to be collected, or such a bond as the law required the court to approve; second, that it is not shown that the necessary steps had been taken to have the orders of the County Court vacated and annulled; and third, that the execution and approval of plaintiff's bond as sheriff is a condition precedent to his right to exercise the functions and duties of collector, and there is no averment in the petition that such bond had been given and approved.

The last objection to the petition will be first considered. It is conceded that the office of collector is made by the statute an incident to the office of sheriff. None of the acts required by the statute to be performed by a party in order to qualify him to exercise the functions of the office of sheriff are made to depend upon the approval of the County Court. It is required that the bond of the sheriff shall be executed within fifteen days after he receives his certificate of election—G. S. 1865, ch. 25, § 3. This bond has to be approved by the Circuit Court, and it is wholly immaterial as far as the right of the plaintiff to exercise the duties of the office is concerned, whether such a bond had been given within the time prescribed or not. It has been held in at least two cases recently determined by this court, that "the matter of time is not essential to the validity of the bond nor a condition precedent to the party's title to the office"—State ex rel. Att'y Gen. v. C. B. Churchill, *ante* 41, and State ex rel. Att'y Gen. v. Howard Co. Ct., *ante* 247. In any event it is a matter into which the County Court was not required to look before passing upon the plaintiff's bond as collector. It was bound to recognize the commission issued by the Governor as conclusive to the plaintiff's right to the office of sheriff, and could not go behind it for the purpose of ascertaining whether all things required of him, and over which that court had no official control, had been performed or not. (See authorities above cited.) Indeed the order made by the court on the 24th of May is based upon the idea that the plaintiff was then acting as sheriff of the county under the commission of the Governor, and he is required within ten days to execute a bond as collector of the revenue, having failed to execute such a bond (in the language of the order) "as by law the sheriff is required to do." This would seem to be a sufficient admission on the part of the court, not only that plaintiff was then acting as sheriff, but that he was doing so rightfully.

Next we proceed to notice the objection to the petition as stated in the demurrer, that it does not show that plaintiff

executed a bond to the satisfaction of the County Court and within the time prescribed by the statute. The averment in the petition is that a bond was executed by the plaintiff as collector so soon as he received his commission as sheriff; that the same was approved by the justices then composing the County Court. He continued to discharge the duties of both offices until notified by order of the new court that he must file another bond. The further allegation is that he complied with the requirements of this order by tendering a bond which he charges was arbitarily rejected and refused, with the malicious design and determination on the part of the justices then composing the court to deprive him of his office. What has heretofore been said in reference to the matter of time, so far as his bond as sheriff was concerned, is equally applicable to the giving of bond as collector. This objection necessarily raises the question as to the extent of the discretion of the court in such cases. In the case of Adamson v. The County Court of Lafayette Co., decided at the last July term of this court at Jefferson City (*ante* 221), and also in the application for a mandamus against the Howard County Court, determined at the August term at St. Joseph (*ante* 247), this discretion was stated in terms sufficiently explicit. The language of the opinion upon that point in the case last referred to was that "the duties of the County Court in this respect are partly judicial and partly ministerial in their nature; that the County Court has a discretion as to the sufficiency of the bonds offered for their approval, which must be exercised in a lawful manner upon the facts presented, and that this court will exercise a superintending control over that discretion so far as to compel the court to proceed according to a sound and just discretion, and to prevent the exercise of it in an unjust and arbitrary manner." It is to be noted that the amount of the penalty of the bond had been fixed by the County Court itself. The averment stands confessed for the purposes of this examination that the court refused to hear any testimony or to pass upon the sufficiency of the security offered. How, then, can it be said

that the petition does not show that a bond had been executed to the satisfaction of the court? The very ground of the complaint in the petition is that the County Court justices refused to consider the matter at all; that no opportunity was afforded the plaintiff to show the fact of the sufficiency of the security offered, and that the bond was of such a character as the County Court in the exercise of a sound and just discretion would have been compelled to approve. We think the averments in the petition as to the character of the bond are amply sufficient, and the facts admitted by the pleadings show most conclusively that the discretion of the court was not exercised in a proper manner.

In relation to the orders of the County Court which the plaintiff asks may be vacated and annulled, it may be said, briefly, that we shall not interfere with them. It is not necessary that it should be done. The conclusion necessarily follows that if the plaintiff did show his right to the office of sheriff, the order of the court vacating it as well as all of the subsequent orders in relation to the same subject-matter were made without authority of law and must therefore be held to be mere nullities—State ex rel. Att'y Gen. v. Churchill, before cited.

The demurrer will therefore be overruled, and it is ordered that a peremptory writ of mandamus be issued from this court, commanding and requiring the justices composing the County Court of Lafayette county to accept and approve the bond tendered to said court by the plaintiff as collector of the revenue in said county. The other judges concur.

---

*Motion for leave to file return to Writ of Mandamus.*

*Ewing & Holliday,* for respondent.

The respondent moves the court for leave to file return to the alternative mandamus in this case, traversing the allegation of said writ, for the following reasons:

First—the attorneys were misled in this, that relying on

the rule established in same case when pending in this court at Jefferson City, when the court permitted defendant to file a return traversing the allegations of the writ, after overruling a demurrer to the same, and believing that such was the rule of pleading prevailing in this conrt on that subject, defendant filed the demurrer in this case to raise and determine questions of law arising on the face of said alternative writ under the belief that, should said demurrer be overruled, the defendant could then make return traversing the allegations of said writ and setting up any new matter that would be a bar to the same ; and at the time of filing said demurrer stated that a return was ready and would be filed if said demurrer was overruled. And had defendant have known or the court intimated that no return could be made after the overruling of said demurrer, defendant would have filed his return as the first pleading in said case ; but believing and relying on the same rule and privilege that was awarded in the case at Jefferson City, he filed said demurrer, and defendant states that he has a good and meritorious defence to said writ upon the facts of the case, for a statement of which he refers to the return which he has prepared, which is here referred to and made an exhibit of this motion, marked "A," and which said return respondent asks leave to file for the reasons aforesaid.

The defendant, for further reason, states that under the first section of the Rev. Stat. of 1866, tit. Mandamus, p. 632, he has a right to make his return to said alternative writ. Said section is in the words following : " When any writ of mandamus shall be issued out of any court in this State, or by any judge thereof in vacation, directed and delivered to any person who by law is reqnired to make return to such writ, such person shall make his return to the first writ of mandamus." Section 2 provides—" When any writ of mandamus shall be issued, and return shall be made thereto, the person suing or prosecuting said writ shall plead or traverse all or any of the material facts contained in such return." Section 3 provides " that the person making such

return shall reply, take issue, or demur to the pleading of the party suing or prosecuting said writ. It is apparent by these sections that the only pleading contemplated by the statute to the first writ is a return, and a demurrer can only be entertained by consent to settle legal questions, and it does not preclude or take away the right of defendant to make his return under the foregoing provisions of the statute.

For further reason, defendant states that in the case at Jefferson City, being informed by counsel that the first pleading was a return, defendant filed a return, which was afterwards withdrawn at the suggestion of the court, that certain questions of law might be determined on the writ and petition of plaintiff, and a demurrer to said writ considered ; which being overruled after hearing by the court, defendant was granted leave to file his return ; and the counsel of defendant knowing said facts, and believing by said precedent it was the practice of this court, filed his demurrer in this case, with no intent to waive and no idea that the right to make return would be waived or lost thereby, and announcing at the time of filing the same that a return was prepared which defendant would ask leave to file should the demurrer be overruled. And defendant states that the ruling of the court in granting the peremptory writ, on overruling said demurrer, without granting defendant leave to make his return, has taken defendant by surprise, and his right will be greatly prejudiced unless this honorable court, for the reasons aforesaid, set aside said order granting said peremptory writ, and grant the defendant leave to file his return to said alternative writ.

*Harding & Crane,* for relator.

Section 1 of the statute respecting the writ of mandamus (G. S. 1865, p. 632) provides that the person who by law is required to make return to the writ shall make return to the first writ of mandamus. Section 2 provides that the person suing or prosecuting such writ shall plead to or traverse all or any of the material facts contained in such return. Sec-

State ex rel. Adamson v. Lafayette Co. Ct.

tion 3 provides that the person making the return shall reply, take issue, or demur.

It is evident from the above that the party to whom the writ is directed can in the first instance do nothing but reply to the alternative writ. He may reply by admitting the facts, and arguing that, upon the facts as admitted, the plaintiff, or relator, had no cause of action, or he may traverse the facts alleged in the petition. In either case he selects his own remedy, and is concluded by his election under the provisions of our statute. In either case it is a return; and if his return should take the form of a demurrer, there is no provision for answer over, as in ordinary cases. To show how the plaintiff would be restricted as to pleading over if he had demurred, we refer to The People v. Fingor, 24 Barb. (S. C.) 348; The People v. Ransom, 2 Comst. 490.

But, without referring to authorities in other States, where the constitutional and statutory provisions respecting the remedy by mandamus differ from ours, it seems sufficient to say that the form of pleading and the effect of pleadings appear to be fixed by our statute. It is an extraordinary remedy to be used in extraordinary cases, and there can be no analogy between the pleadings in ordinary cases and this proceeding further than the statute creates the analogy.

*Opinion of the Court upon motion for leave to file a return to the alternative writ.*

Fagg, J.—There can be no controversy about the requirements of the statute in relation to the formal steps to be taken in a case of this sort, where they are insisted upon at the proper time. It is clear that the issues should be made up on the return to the alternative writ, and the practice in this court has been, for the purpose of reaching the legal questions involved, to assume that the necessary steps in pleading have been taken whenever it is apparent from the facts presented that such questions do properly arise.

It can make but little difference what name is given to the paper filed by the defendant to the alternative writ. The

counsel chooses to call it a demurrer, but in the very first sentence the following language is used: " *The defendant, for answer and return to said writ, demurs to the petition and writ of the plaintiff,*" &c. The entire paper seems to be an effort to show cause, by setting out in detail the facts in the case and reasons, why the peremptory writ should not be granted. This is to all intents and purposes a return to the alternative writ, and we have proceeded to consider the whole case as upon a demurrer to it. In this course it is conceived that we are fully justified by the former practice of the court. Reference is made particularly to the case of Dunklin County v. The District Court of Dunklin Co., 23 Mo. 449. The motion for leave to file a return is accompanied by an exhibit containing the matters proposed to be set up in the answer to the writ, and it has been examined with some care to see if there is really any additional cause shown for the refusal of the writ.

For the reasons stated in the opinion heretofore given in this case, all that portion that pertains to the legality of the election and the certificate issued to the plaintiff, as well as the allegation in relation to his failure to execute a good and sufficient bond as sheriff, must be excluded from consideration. The commission issued by the Governor was conclusive upon the County Court as to the right of plaintiff to the office of sheriff, and it is not within the province of that tribunal to inquire into the sufficiency of his bond as such. Having treated the orders made by the County Court at the time of declaring the office of sheriff vacant, and such as were made subsequent thereto, as mere nullities and without any authority of law, it will not be necessary to consider so much of the proposed return as relates to them.

It seems to be admitted that the plaintiff did, within the time limited by the order of the court in relation to the filing of a new bond, appear and present for its approval a bond in the penal sum required in the order, but it is averred that in the mean time it had been ascertained that the revenue would actually amount to the sum of $100,000, and that

OCTOBER TERM, 1867. 561

State ex rel. Adamson v. Lafayette Co. Ct.

therefore the bond was insufficient on that account. Admitting this to be a true statement of the facts, it would seem to be a great hardship upon the plaintiff, after fixing the penalty at a specific sum and giving him only ten days to procure solvent sureties for so large an amount, to say to him when his bond was presented that there was a mistake in the amount of the revenue to be collected, and his bond was not large enough by at least $30,000, and must be rejected. What was the necessity for this hasty action on the part of the County Court? If a mistake had been committed in reference to the amount for which the bond was required to be given, Adamson was certainly not responsible for it. He had been led into error by the action of the court itself—and common fairness would seem to require that some additional time ought to have been given him to file a new bond and hunt up additional sureties. Certainly the public interest could not have suffered by pursuing such a course, and it is fair to presume that the plaintiff could not comply with the requirements of the court at once, but ought to have had a reasonable time given him to do so. The question as to the solvency of the sureties offered by the plaintiff seems really to cut but a small figure in the transaction, and great stress is laid upon the fact that the penalty of the bond offered by the plaintiff was not double the amount of the revenue to be collected, and therefore it was not such a bond as the law required. Then admitting the solvency of the sureties offered, the theory of the court would seem to be that no further time could be given to the plaintiff, and the bond must at once be rejected for insufficiency and the office declared vacant. There is much in this transaction that does not harmonize with the theory that the court was acting in the exercise of a sound and just discretion in the premises. There is nothing in the statute that prohibits the County Court from requiring the collector, at any time when the protection of the public interest would seem to demand it, to give additional bond and security. In all cases, however, he would be entitled to a reasonable time to comply

with the order of the court; and if it is not given, and no good cause shown to the contrary, the presumption would be that the court had acted in an arbitrary and unjust manner.

The proposed return, stripped of all the matters which we have intimated do not properly belong to the investigation of this case, is narrowed down simply to the action of the County Court upon the bond presented by plaintiff as collector. It is therein admitted that the bond was presented within the time prescribed by the court. It is averred that it was insufficient in the amount of its penalty; also that the sureties were not together worth more than half that sum, and that the court proceeded to hear all the testimony offered by the plaintiff to prove their solvency.

If, as alleged, there was at the time an examination into the sufficiency of the bond, some record of the fact as well as the judgment of the court ought to be shown in proof of it. There is nothing of that sort appearing, and the presumption arising upon the case as presented is that there was not in point of fact any judicial investigation or determination of that fact. A copy from the assessor's books showing the several amounts at which the sureties upon the bond had been assessed is annexed to the return, and much weight seems to be attached to this sort of testimony for the purpose of sustaining the action of the court. We think it should not be held in any case as conclusive upon the amount of the property owned by any individual; but, in the absence of other testimony more direct and reliable in its character, it is not disputed but that a certain amount of weight might be attached to it. The fact is well known, however, as a part of the history of the State, that these assessments—almost without an exception—are very far below the actual value of the assessed property. The sworn statements of the parties themselves, as shown by the papers and exhibits in the cause, places the aggregate amount of the value of all their property at something more than $270,000. Assuming, however, that this is too high an estimate, and believing that the assessment is much too low, as it is ordinarily in almost every

county in the State, it would be safe perhaps to put the amount just half way between the two. The amount of the assessment being about $145,000, half the difference between the two estimates would fix the true sum at $207,000. This would be sufficiently large to cover the second estimate of the revenue made by the County Court, and make the bond in all respects amply sufficient. In this view of the case, we have really given the respondent the benefit of all the facts proposed to be set up in the return to the alternative writ.

We see nothing in the facts stated to change the conclusion reached in the former opinion, and the respondent's motion must be overruled. The other judges concur.