## BOSELY VS. WOODRUFF COUNTY COURT.

COUNTY COURTS: *Authority of, as to collector's bond.*

Where a sheriff presented his bond as collector to the county court for approval, and the bond was refused on the ground that the same was not presented within the time specified by the statute, and the court appointed another person as collector: On *mandamus* to compel the county court to pass upon the bond: *Held*, 1. That all the sheriff was bound to do was to present his commission as sheriff to the county court to satisfy its members that he was *ex-officio* entitled to the office of collector; that the sole duty of the county court was to pass upon the sufficiency of the bond and the solvency of the security, and whether the failure to give the bond within the time specified by the statute forfeited the right of the sheriff to the office of collector, was a question upon which the county court was not authorized to pass. 2. That the act of approving or disapproving a collector's bond is ministerial, ad    where the court fails or refuses to act, *mandamus* will lie.

PETITION for *Mandamus.*

*Montgomery & Warwick*, for petitioner.

*Willshire & Allen*, for defendant.

McCLURE, C. J.   The relator in this case asks for a writ of *mandamus* against the county court of Woodruff county, commanding and compelling said county court to assemble and hold a term of said court, to take action and approve his bond as collector of said county, and directing said court to order the said Albert Adams to turn over to him the tax-books of said county, etc.

Right at the threshold of this case we are met with the proposition, that it is not within the province of this court to direct an inferior court, clothed by law with jurisdiction of the subject matter, and having a legal discretion, what action it shall take.   We are told that in such a case, no matter how

erroneous the action of the inferior court may have been, that it cannot be reviewed on *mandamus*. It is true that a determination by a judicial tribunal of a judicial question cannot be reviewed by this court on *mandamus*, but while this is so, it is equally true, if the action required is that of a ministerial or executive character, that the court will not stop at commanding the person or authority so charged to act, but will direct in specific terms what shall be done.

The first question to be solved is, " Is the approval or rejection of a collector's bond a judicial, or a ministeral act?" This self-same question was asked in the case of *Adamson v. La Fayette County Court*, 41 Mo., 225, and the court said: " The only duty of the court is to be satisfied that the bond and security are sufficient. The approval or rejection of the bond is essentially ministerial, though coupled with a discretion. There is nothing presented before the tribunal for adjudication, and its action is not the exercise of a judicial discretion or judgment within the meaning of the rule.

Let us see where it would lead to, if it should be held that the approval or rejection of a collector's bond is a judicial act. Under the 176th section of the revenue law of 1871, the presiding judge of the county court, in vacation, is clothed with power to approve the bond of the collector. Suppose he should refuse to approve a bond that was formal in all its parts, and the solvency of which no fair-minded man would question. What is the remedy of the collector in such a case? Could he appeal? Why, the answer is, that the refusal to approve a bond is not a judicial determination, and, therefore, not appealable from. Does the fact, that the approval of the bond, after a certain period, is by law transferred to the county court, change the character of the act? We think not. Having come to the conclusion that the approval or rejection of a collector's bond is a ministerial

and not a judicial act, our next inquiry will be, Has the relator a clear legal right to the performance of the thing demanded? The right of the sheriff of a county to act as collector is derived from legislative enactment. The 78th section of the law declares that, "Each sheriff in this state shall be ex-officio collector of all taxes assessed on the tax-books of his county." Section 79 declares that "each sheriff, before entering upon his duties as collector of taxes, shall give bond and security to the state to the satisfaction of the county court, conditioned," etc. Section 176 provides that "the presiding judge of the county court shall have power to approve the bond of a collector of revenue in vacation, subject to the approval or disapproval of the county court at its first meeting thereafter." Section 80 declares that "if the sheriff of any county should fail to give bond, as provided in section 79, before the first day of January of each year, the clerk of the county shall convene the county court forthwith, if not then in session, and said court shall immediately appoint some competent person as collector." From the foregoing sections it is incumbent on the relator to establish two things: first, that he was the duly and legally elected sheriff of Woodruff county; and, second, that he gave the required bond within the time prescribed by law.

He sets out in his relation, and the facts are admitted by demurrer, that he was duly and legally elected sheriff of Woodruff county, on the 5th of November, 1872; that he was duly commissioned as such by the governor; that he is a legal and qualified elector of the state; that he has taken the oath of office prescribed by the constitution; that he is his own successor; that on the 10th day of January, 1873, he presented his bond as collector of said county in the penal sum of $162,-786, conditioned as the law directs, with good and sufficient sureties thereto, to the county court, which said court was then

in session, and that the same was by the clerk filed ; that said court, regardless of its duty, refused to take any action on said bond, to either approve or disapprove the same ; but unlawfully and fraudulently in collusion with one Albert Adams, connived and conspired to defraud him out of the benefits of said office of collector; and without any authority therefor, made an order appointing Albert Adams collector of said Woodruff county, who, anticipating the action of said county court, and being in collusion therewith, presented to said court a bond, which he had previously prepared, that was then and there accepted and approved, and the clerk of said court ordered to turn over the tax books to said Adams, which order was then and there obeyed. None of these facts are contradicted or controverted, and the defendants stand before this court saying, "What are you going to do about it? We are a judicial tribunal, and our discretion cannot be controlled by *mandamus*." We have already exploded the idea that the county court was acting judicially when it was approving or disapproving a bond, and this brings us to another important inquiry, and that is : " Has the relator any other adequate remedy ? " An appeal will not lie from a ministerial act, nor could the proceedings of the county court in this case be quashed on *certiorari*. It may be suggested that the question now is, which of two persons is entitled to the office, and that *quo warranto* and not *mandamus* is the proper remedy by which to settle that question. To this we reply that *quo warranto* is the state's remedy, and not that of an individual, and that it will not be granted to determine a private right, and even if it could, it would not settle the question at bar. *Ramsey v. Carhart*, 27 Ark., 12. Finally, it is asked if the relator has not an adequate remedy provided him by section 525 of the civil code, which declares that " whenever a person usurps an office to which he is not entitled by law, an action by pro-

ceedings at law may be instituted against him, either by the state or the party entitled to the office." It must be borne in mind this is not a proceeding to test the title to an office, or whether Adams is a usurper, but on the contrary, a proceeding to compel the county court to approve the bond of the relator. The result of a trial under the 525th section of the code would not be decisive of the question at bar, for the settlement of the question of who was entitled to the office does not determine whether the county court shall approve or disapprove the bond presented that body by the relator. The mere approval of Bosely's bond does not preclude Adams from testing his right to the office. In the proceeding at bar, Adams is not a party to the suit, either plaintiff or defendant, and no matter what the order of this court may be, it cannot affect his legal rights. When the law says *mandamus* will not issue where the party has another adequate remedy, it means that it will not issue where the same parties could go before another tribunal, and there adjudicate and settle the matter in dispute, that is asked to be settled by *mandamus.* *State v. Ely,* 43 Ala., 557.

Having seen that the relator could not appeal from a ministerial act, and that certiorari would not lie to quash the action of the court, and that if it did, it would not afford the relator a remedy, and that he could not assert his rights either under the 525th section of the code, nor by quo warranto, it necessarily follows, there is no other adequate remedy. This question settled, we will return and inquire, first, whether the relator was duly and legally elected sheriff of Woodruff county; and second, whether he gave the required bond within the time prescribed by law? The first inquiry is admitted, which restricts the inquiry as to whether he gave bond within the time required by law. The revenue law says the bond shall be to the satisfaction of the county court, and shall

be given before entering upon his duties as collector, and that, if not given before the first day of January of each year, the county clerk shall convene the county court, and that said court shall appoint a collector. The relator himself shows that the bond was not tendered to the county court before the first of January. Did this forfeit his right to the office? The general rule is, that where a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered as directory, merely, unless the act to be performed, or the language used by the legislature, shows that the designation of time was intended as a limitation of the power of the officer. Sedgwick, Stat. and Con. Law, 372.

In the case of *The People v. Wescott*, 12 Wend., 48, which was a proceeding by quo warranto, the question was, whether or not a sheriff lost his office by neglecting to give his official bond within twenty days after he shall receive notice of his election. The facts at the trial show that the bond was not filed within the twenty days, and the court held that the neglect did not forfeit his right to the office. In the case of *The State v. Carneall*, 10 Ark., 156, which was a proceeding by quo warranto, the question was, whether a failure to return his assessment list within the time prescribed by law did not forfeit his office, and the court held that it did not. In the case of *The State v. Lewis*, 10 O. S., 129, which was also a proceeding by quo warranto, the question was whether or not a sheriff lost his office by neglecting to give his bond within ten days after receiving his commission, as the statute directed. The evidence disclosed that the bond was not tendered for approval until seventeen days after the time, and the court held that the neglect did not forfeit the office. If we should follow in the wake of these authorities, it at once becomes apparent, upon principle and from analogy, that the failure of

the relator to file his bond before the first day of January did not work a forfeiture of the office. All these decisions are based upon the theory that such statutes are directory. Yet, in the case of *Parker v. Overman*, 18 How. (U. S.), 143, the supreme court of the United States held that the failure of the assessor to file his oath of office within the time required by law, rendered the entire assessment void, and that a legal sale of land for taxes could not be made that was based upon an assessment made under such circumstances. The correctness of this opinion, however, is questioned in the case of *Scott v. Watkins*, 22 Ark., 556, and we confess ourselves at a loss to understand why it is that an act, which in a direct proceeding, is not sufficient to forfeit the office, is sufficient to invalidate all his subsequent acts as an officer.

Sedgwick, in his work on statutory and constitutional law (380), says: "In regard to the cases where statutes are held to be directory, the greatest difficulty exists; and there appears no mode of obviating it until legislative enactments shall be framed so as to specify, with precision, the consequences intended to follow upon a disregard of their provisions." The statutes now under consideration belong to the class that do not specify, with precision, the consequences intended to follow upon a disregard of the law, fixing a time within which the bond should be given. A failure to give the bond as collector, under the law, does not in any manner interfere with the right of the sheriff to hold his office, and the law imposes no penalty on him for failing to file a bond as collector. The legislature seems to have contemplated and provided for a contingency, in which the sheriff might not be able to give a good and sufficient bond, and to have directed how the county court, in such a case, should proceed. This, we say, more clearly seems to have been the intention of the legislature, than to have provided a contingency, in which the county

court should be clothed with an appointing power. Having seen that a neglect to present a bond to the county court before the first of January did not necessarily forfeit the right of the sheriff to the office of collector, let us inquire what was the duty of the county court when Bosely presented his bond to it on the 1st of January, 1873.

The law says (sec. 79) that the collector shall give bond and security before entering on the discharge of his duties, to the satisfaction of the county court. This grant of power only authorizes the county court to inquire into two things: first, the bond, and second, the security, and is not a grant of power to determine which of two persons are entitled to an office, or whether one of them has been guilty of such neglect and laches as to deprive him of his right to it. In the case of *Ad. amson v. La Fayette County Court*, 41 Mo., 554, the supreme court of Missouri, in construing the power and duty of the county court under precisely such a statute as we have, and in a case where the county court refused to approve the bond offered by the sheriff as collector, on the ground that the sheriff had not filed his bond as sheriff at the time he tendered his bond as collector, said: "The county court was bound to recognize the commission issued by the governor as conclusive of the relator's right to the office of sheriff, and could not go behind it for the purpose of ascertaining whether all things required of him had been performed or not." In that case, as in the one at bar, the county court, instead of confining its action to the bond and security, assumed unto itself the power of deciding that the sheriff was not entitled to the office of collector, because of certain neglects which, in the opinion of the county court, worked a forfeiture of the right to the office. The record of the county court, a copy of which is before us, says: "Upon consideration of said bond, the court was of the opinion that the bond has not been given in compliance with

law." These words, followed as they are with the appoint-
ment of Adams, rather denote an objection to the right of the
sheriff than to the bond or the sureties. The county court is
a court of limited jurisdiction, which must be shown affirma-
tively, and if it is clothed with the power to declare an office
forfeited, as it has in effect done in this case, we have been
unable to find the statute conferring the jurisdiction. In our
opinion all that the relator was bound to do was to present his
commission as sheriff to the county court to satisfy its mem-
bers that he was ex-officio entitled to the office of collector;
this done, the sole duty of the county court was to pass upon
the sufficiency of the bond and the solvency of the security.
Whether the failure to give the bond before the first of Janu-
ary forfeited the right of the sheriff to the office of collector
is a question upon which the county court is not authorized
to pass, and its action in such case is *coram non judice*. *State
v. Ely*, 43 Ala., 575.

But a short time since, a cause was pending in this court,
where it appeared that a county court had met at two o'clock
in the morning and adjourned to prevent a sheriff from pre-
senting his bond as collector to the county court for approval,
for the purpose of placing it within the power of the county
judge and his midnight conspirators to appoint a collector.
The case now before us is but a little less shocking to a sense
of justice than the one mentioned. The facts in this case dis-
closed show that for three weeks before the first day of Jan-
uary there was no session of the county court, and that on the
first of January the court convened. Before it was the sheriff,
with what we are to concede was a good and sufficient bond
as collector, and one Adams, who also had a bond with him
as collector. The record of the county court shows conclu-
sively that the relator presented his bond to the court for ap-
proval, and that that body on examination found it had not

"been given in compliance with law," and proceeded to appoint Adams. It takes time to get a collector's bond, such as a county court should accept for $162,786, and it is idle to insist that Adams had this bond prepared and signed without some previous understanding with the members of the county court that he was to have the appointment. It is the duty of the county court to furnish every person with an opportunity to comply with the law, where its action is required, in order to perfect the right of another. The provision in the law that the county court might, in default of the sheriff to give a collector's bond by the first of January, appoint some person to act as collector, was intended to authorize the county court on the happening of a contingency, arising from a neglect of the sheriff to provide for a collection of the taxes, and was not intended as the conferring of an appointing power which should spring into being by reason of the iniquity of the members of the county court. On account of the existence of an opinion at variance with that here expressed, it may not be amiss, in connection with this case, to speak of the powers of the county court in the matter of approving and disapproving bonds.

This whole question was fully and elaborately reviewed by Judge Wagner, in the case of *Adamson v. La Fayette County Court*, 41 Mo., 226. In that case the judge said : "The only duty of the court is to be satisfied that the bond and security are sufficient. * * * When the law devolves upon an officer the exercise of a discretion, it is a sound legal discretion, and not a capricious, arbitrary or oppressive one. * * A hostile county court could remove any sheriff in the state and vacate his office by declaring his bond insufficient, and arbitrarily refusing to hear his testimony in regard to the solvency and pecuniary responsibility of his sureties. * * * A discretion delegated to an officer is a sound, legal discre-

tion, the meaning of which is well known and understood in the law, and is not an unlimited license to the officer to do and act as he pleases, irrespective of restraint. The universal practice has been and doubtless it is the most satisfactory way of proceeding in determining the sufficiency of a bond, to examine the parties to the bond who have signed it, touching their responsibility, and also other witnesses who are conversant with their means, in open court, and we are at a loss to know why this privilege was denied the relator. He had the right to introduce evidence concerning the sufficiency of the bond; it was the duty of the court to hear the same." What is here stated in relation to the approval of bonds we fully indorse, and add that in every case where a bond is tendered, it is the duty of the officer or authority charged by law with its approval, to make proper inquiry in relation thereto, not for the purpose of ascertaining whether he likes or dislikes the persons whose names are signed thereto, but whether the bond is formal and whether the sureties are worth the amount named in the bond over and above the exemptions allowed by law. The mere fact that all the signers to a bond are not personally known to the person who is to approve the bond is not sufficient to warrant its rejection. In such case the person tendering the bond should have the privilege of presenting proof of the pecuniary responsibility of such persons.

We are unanimously of opinion that the failure of the relator to present his bond at an earlier date than was done in this case did not work a forfeiture of his right to the office of collector, and but for the fact that the collection of taxes is already made and that *mandamus* at this late day would not invest him with the office, the writ would issue. For the reason, therefore, that the writ at this late day would be ineffectual, it will not issue.